**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZAKARY COPELAND,<br><br>               Plaintiff<br><br>      v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>               Defendant | CASE NO. 1:15-CV-00096-BAM<br><br>ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |

**INTRODUCTION**

Plaintiff Zakary Copeland ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 6, 7.) On April 7, 2015, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTS AND PRIOR PROCEEDINGS**

On May 22, 2013, Plaintiff (then known as Layla Christine Copeland), filed his application for disability insurance benefits.[2] AR 18. Plaintiff also filed an application for supplemental security income on June 29, 2011. *Id.* Plaintiff alleges he became disabled as of February 1, 2011, due to mental illness and physical impairments. *Id.* Plaintiff's application was denied initially and on reconsideration. *Id.* Subsequently, Plaintiff requested a hearing before an ALJ. *Id.* ALJ Dale. A. Garwal held a video hearing on April 22, 2013 and issued a decision denying Plaintiff's request on May 22, 2013. *Id.* Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 6-9. This appeal followed.

**Hearing Testimony**

The ALJ held a video hearing on April 22, 2013 in Santa Barbra, CA. AR 18. Plaintiff appeared and testified in San Luis Obispo, CA. AR 34.  Plaintiff was represented by attorney Joseph C. Gallas. *Id.* Impartial Vocational Expert ("VE") David Van Winkle also testified. *Id.*

In response to questions from the ALJ, Plaintiff testified he has a high school diploma. AR 37. Plaintiff last worked in February 2011 as a merchandiser for the Pepsi Company. *Id.* Plaintiff's duties included unloading and loading sodas from delivery trucks. *Id.* Plaintiff lifted up to 75 pounds. *Id.* From 2006 to 2008, Plaintiff worked as a cable installer and an audit collector. AR 37-38. As an audit collector, Plaintiff visited customers, collected on past due accounts, and disconnected subscribers' cable for lack of payment. AR 38. From 2005 to 2008, Plaintiff worked as a janitor. AR 38.

When asked about physical pain, Plaintiff testified he had lower back pain and radiation down his right leg and his pain is constant. AR 38-39. While Plaintiff has tried physical therapy in the form of different stretching exercises to alleviate his pain, he has never had any back surgeries nor discussed the possibility of surgery with any physicians. AR 39.

When asked about pain medication, Plaintiff testified he takes 800 milligrams of

---

[2] The record reflects that Plaintiff identifies as male.  For consistency, the Court will only use the "he" pronoun when referring to Plaintiff.

Ibuprofen, Baclogen, and Norcos four times a day. AR 40. Plaintiff experienced side effects from the Norcos including dry mouth, constipation, and upset stomach. AR 40.

When asked about his mental health, Plaintiff testified he is depressed, has crying spells, and both thinks about committing suicide and has attempted suicide. AR 40. Plaintiff last attempted suicide in 2011 and was hospitalized overnight. AR 40-41. Plaintiff sees a psychiatrist once a week. AR 41. He prefers to be alone and gets into both verbal and physical altercations. AR 41.

When asked about other drugs, Plaintiff testified that psychiatric medication is "definitely" helpful. AR 41. Plaintiff once had a serious alcohol problem beginning in 2009. AR 41. Plaintiff however went to rehab and has not had any relapses. AR 41-42. Plaintiff now attends Alcoholics Anonymous "AA" or a similar organization. AR 42.

When asked about daily activities, Plaintiff testified he uses a cane on his left side but that it was not prescribed by a doctor. AR 42. Plaintiff lives alone and spends most of the time at the library. AR 42. Plaintiff generally reads and only uses the computer if he has to. AR 42. Plaintiff has been homeless for almost a year and stays in the back of his truck. AR 42. He does not have insurance, but he currently receives a "homeless grant," food stamps, and general relief. AR 39-42. Plaintiff does not do any socializing and watches TV when he can. AR 42. Plaintiff has no family and one friend. AR 43.

In response to medical questions from Plaintiff's attorney, Plaintiff testified he has never had back injections. AR 43. During Plaintiff's physical therapy, the therapist touched Plaintiff but Plaintiff was never placed in any water based exercises. AR 43. Plaintiff's treating physician had suggested water exercises and an MRI. AR 43. Plaintiff was denied both procedures because his homeless grant did not cover the treatments. AR 43. Plaintiff was offered injections but Plaintiff denied the treatment because he did not know about the side effects and the injections were based on x-rays from 2011. AR 43. Since getting new x-rays, Plaintiff has not had a chance to discuss injections with his doctor. AR 44. Even if a physician now recommended injections, Plaintiff is still concerned about side effects. AR 44.

In response to occupational questions from Plaintiff's attorney, Plaintiff testified many

prior jobs have ended because of problems with coworkers and supervisors. AR 44. Plaintiff has had more problems with supervisors than coworkers. AR 44-45.

In response to questions regarding hand pain from Plaintiff's attorney, Plaintiff testified his treating physician indicated he has hand pain causing him to wear a splint on his right hand. AR 45. Plaintiff is unsure of the origins of his hand pain but believes it may be caused from using a cane. AR 45. Plaintiff was given a wrist brace from his physician but obtained a new one that was less restrictive on mobility. AR 45.

In response to mobility questions from Plaintiff's attorney, Plaintiff testified he can stand for twenty to thirty minutes and then needs to sit for ten to twenty minutes. AR 45-46. Plaintiff alternates between sitting and standing throughout the day because of his back pain. AR 46.

Following Plaintiff's testimony, the ALJ elicited testimony from vocational expert ("VE") David Van Winkle. AR 46. Plaintiff testified that his cable company position required him to travel to the customer's location and collect payments, or in the alternative, disconnect service. AR 46. Disconnection of services sometimes required Plaintiff to climb a ladder. AR 47. The VE testified Plaintiff's past work included cable installer, collector, janitor, and merchandiser-stocker. AR 47. All activities were performed above the sedentary level. AR 47.

The ALJ then asked the VE hypothetical questions, contemplating an individual of claimant's age, education, and past work experience. AR 47. In the first hypothetical, the ALJ asked the VE to consider an individual who could lift ten pounds frequently to twenty pounds occasionally, can stand six hours in an eight hour workday, and occasionally bend or stoop, if that individual could perform the same jobs as previously performed by Plaintiff. AR 47-48. The VE testified this individual could not perform any of the Plaintiff's past work. AR 48. The ALJ then asked if there are other jobs such an individual could perform. AR 48. The VE testified such an individual could perform light, unskilled work such as a facility clerk or storage facility rental clerk. AR 48. Furthermore, such an individual could work as a hand packager inspector, light, unskilled. AR 48.

In the second hypothetical, the ALJ added functional limitations of lifting five pounds frequently to ten pounds occasionally, can stand two hours in an eight hour work day, sit six

4

hours, and occasionally bend or stoop. AR 48. The VE testified this hypothetical person could work as a production inspector, sedentary, unskilled. AR 48. The VE added the individual could also work as a sorter, sedentary, unskilled. AR 48.[3]

When the VE was examined by the Plaintiff's attorney, the VE testified that no occupations exist for a person who had problems completing work at a constant pace of fifteen percent. AR 50. The VE testified if the same hypothetical person had a hand disability that limited their ability to use their hands to five percent a day; the sorter position would be precluded. AR 50. However, such an individual would still be able to perform a production inspector position. AR 50.

**Medical Record**

The entire medical record was reviewed by the Court. AR 249-477. The medical evidence, summarized here, will also be referenced below as necessary to this Court's decision.

In April 2011, Plaintiff sought treatment for panic attacks and anxiety from Behavioral Health Services. AR 249-257. Dr. Ronald Morgan prescribed Plaintiff anti-anxiety and anti-depressive medication and diagnosed Plaintiff with panic disorder without agoraphobia. AR 250-251. Plaintiff reported good satisfaction with these medications. AR 250.

Treating physician Dr. Bala Bhat found Plaintiff's lumbosacral spine and right hip showed minor degenerative changes. AR 270. Plaintiff was referred to pain management. AR 269. On referral, Plaintiff saw Dr. Lagattuta for pain management and was prescribed pain medications. AR 402-454. Dr. Bhat also administered testosterone injections. AR 307-323.

On August 20, 2011, Plaintiff underwent a psychological consultative examination by Psy. D. Gerardine Gauch. AR 296-301. Plaintiff was diagnosed with adjustment disorder with depressed mood and polysubstance dependence in reported remission. AR 300. The consultative examiner found limitations in the claimant's ability to complete a normal workday/week without interruptions was fair and the Plaintiff's ability to interact with coworkers was fair. AR 301.

On August 26, 2011, Plaintiff underwent an internal medicine consultative examination by

---

[3] The VE cited the Bureau of Labor Statistics, Occupational Employment, as well as the Labor Market Information Division of EDD, State of California, and the Dictionary of Occupational Titles. AR 48-49.

Dr. Michael Wlasichuk. AR 302-305. The consultative examiner diagnosed chronic lumbar pain with mild degenerative changes with some evidence of right L4-5 sciatica. AR 304. The consultative examiner opined that Plaintiff could lift fifteen pounds occasionally and five or ten pounds frequently. AR 305. He opined Plaintiff could stand or walk for four hours of an eight hour day and sit for six hours. AR 304. Furthermore, he opined Plaintiff would have limitations crouching, crawling, balancing, stooping, and could not perform forceful pushing or pulling. AR 304.

On September 13, 2011, Plaintiff saw his psychiatrist, Dr. Morgan, and reported good optimism regarding his clinical stability and progress. AR 306. On November 7, 2011, Plaintiff told Dr. Bhat he was mentally feeling better and had no major complaints. AR 321. On November 14, 2011, Plaintiff reported good satisfaction with his psychotropic medication. AR 466.

On December 12, 2011, Plaintiff told Dr. Bhat that his back pain is severe but stable and that heat and medication relieved his symptoms. AR 317. On December 27, 2011, Plaintiff saw neurologist Dr. Henry Lee who diagnosed sciatica and recommended an MRI of the lumbar spine. AR 455. Further, Dr. Lee noted Plaintiff's symptoms are suggestive of lumbosacral radiculopathy. AR 455. On November 14, 2011, Plaintiff told Dr. Lagattuta that his back pain was worse. AR 436.

In February 2012, Plaintiff reported to Dr. Morgan that his depressive symptoms were largely attributed to problems with his significant other. AR 464. Plaintiff reported good satisfaction with antidepressant and antianxiety medication and no significant side effects. AR 464. On May 3, 2012, Plaintiff reported near optimal benefits with his psychotropic medications. AR 462. On May 11, 2012, Plaintiff reported he was having trouble sleeping and was traveling back and forth from the central valley. AR 425. On that same day, Plaintiff tested positive for methamphetamines. AR 336. On August 29, 2012, Plaintiff reported he was doing well and contemplating a hysterectomy and filing name and gender change legal documents. AR 378. On September 7, 2012, Plaintiff tested positive for oxycodone (AR 337), which he had not been prescribed. AR 416.

On September 26, 2012, Plaintiff demonstrated appropriate mood and affect to Dr. Scott

Wright. AR 385. On October 10, 2012, Plaintiff reported to be doing well with his testosterone injections. AR 387. On November 7, 2012, Plaintiff reported persistent back pain. AR 390. The following month, Plaintiff described increased depressive symptoms after his grandmother passed away. AR 459.

On April 2, 2012, Plaintiff saw Dr. Bhat and reported wrist pain, back pain, depression, anxiety, and fatigue. AR 472. That same day, he asked Dr. Bhat to fill out a medical source statement for his disability application. AR 476-477. In December 2012, Plaintiff reported right wrist pain to Dr. Bhat. AR 393. In a medical source statement, Dr. Bhat stated Plaintiff is disabled. AR 323.

## **THE ALJ'S DECISION**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18-26. The ALJ found Plaintiff had the following severe impairments: osteoarthritis of the hip and degenerative disc disease of the lumbar spine. Further, the ALJ found that Plaintiff suffered from depression, anxiety, fatigue, pain, polysubstance dependence, and possible gender change surgery. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments individually or in combination.

Based on a review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the ability to lift five pounds frequently, ten pounds occasionally, stand two hours and sit six hours out of an eight hour day, occasionally bend or stoop, and is limited to simple, routine tasks with occasional contact with the public and co-workers. AR 23. The ALJ found that Plaintiff could not perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could still perform. AR 24-25. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 26.

## **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,

this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that they are not only unable to do their previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff contends that the ALJ (1) failed to address his gender dysphoria, (2) improperly rejected his treating physician's opinion, (3) erred in discounting his credibility, and (4) failed to adequately conduct a Step Five analysis. (Docs. 17, 20).

## DISCUSSION

**1.    The ALJ Properly Considered Plaintiff's Gender Dysphoria**

Plaintiff first contends that the ALJ improperly failed to consider his gender dysphoria as a

severe impairment.

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28, 1985 SSR LEXIS 19). "[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).

The Ninth Circuit has ruled that, when the ALJ has resolved step two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at step two. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (even if ALJ erroneously failed to find an impairment "severe," this error "could only have prejudiced [the claimant] in step three (listing impairment determination) or step five (RFC) because the other steps, including [step two], were resolved in her favor"). Here, the ALJ found that Plaintiff had some severe impairments and resolved step two in his favor. Therefore, any error in failing to find that Plaintiff's alleged gender dysphoria was severe is harmless at step two.

**2. The ALJ Adequately Weighed Plaintiff's Treating Physician Opinion**

Plaintiff next asserts that the ALJ erred in rejecting the opinion of his treating physician Bala Bhat, M.D. The ALJ however gave several reasons for assigning little weight to the opinion of Dr. Bhat.

**A. Legal Standard**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor,

9

it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Commissioner considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6). Because the opinion of Dr. Bhat, which found total disability, was contradicted by the examining physician's opinion—which opined that Plaintiff was more functional than the ALJ's ultimate conclusion, the issue is whether the Commissioner had specific and legitimate reasons supported by substantial evidence in the record for rejecting Dr. Bhat's opinion. *See Murray*, 722 F.2d at 502; AR 24.

**B.  Analysis**

In April 2011, Plaintiff presented to treating physician Dr. Bhat with right hip and low back pain, symptoms of sciatica, chronic anxiety, and bronchial asthma. AR 272. Dr. Bhat found Plaintiff's lumbosacral spine and right hip showed minor degenerative changes. AR 270. Two months later, testing by Dr. Bhat revealed "low back tenderness and diffuse pain to the right lower extremity due to sciatica" and he assessed Plaintiff with "chronic sciatica and low back pain." AR 262-63. Plaintiff was later referred by Dr. Bhat for pain management. AR 269. Plaintiff saw Dr.

1 Lagattuta for pain management and was prescribed pain medications. AR 402-454. In a medical source statement, Dr. Bhat stated that Plaintiff is disabled. AR 323.

The ALJ rejected Dr. Bhat's opinion because it was conclusory, and provided a checklist without detailed explanation. AR 24. The Ninth Circuit supports the rejection of a conclusory treating physician opinion when it lacks sufficient explanation to support its conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("ALJ may 'permissibly reject ... check-off reports that [do] not contain any explanation of the bases of their conclusions'"); *see Jones v. Colvin*, No., at *12 (E.D. Cal. 2016) ("[O]pinion of a treating physician may be rejected where an ALJ finds incongruity between a treating doctor's assessment and his own medical records"), *citing*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008)*; Burkhart*, 856 F.2d at 1339–40 (ALJ properly rejected treating physician's opinion which was unsupported by medical findings, personal observations or test reports); *Batson v. Comm'r.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may properly reject a physician's opinion that is conclusory and unsupported by objective medical findings); *see also* 20 C.F.R. §§ 404.1527(c)(3) (in weighing a medical source opinion, the ALJ will consider the explanation and medical evidence the doctor provides in support of his opinion, as well as the consistency of the opinion with other evidence in the record).

While Plaintiff argues that Dr. Bhat's opinion was supported by various medical examinations throughout the record (Doc. 20 at 4), even if Dr. Bhat provided adequate treatment notes in conjunction with his check off list, many of those treatment notes undermine Dr. Bhat's finding of total disability. *See* AR 317 (Plaintiff told Dr. Bhat that the back pain is stable and that heat and medication relieved his symptoms); AR 280 (there are mild degenerative changes with mild osteophytosis in the lumbar region). Furthermore, Dr. Bhat's disability restrictions were based on Plaintiff's self-reported history of pain and very little objective findings. AR 24. The ALJ further noted that Plaintiff's self-reports were inconsistent with Dr. Bhat's finding of total disability.AR 24; *see* AR 306 (Plaintiff reported good optimism regarding his clinical stability and progress); AR 321 (Plaintiff reported feeling better and having no complaints); AR 250 (Plaintiff reported good satisfaction with medication).

In weighing the medical evidence, the ALJ instead credited the August 26, 2011 opinion of

11

examining physician Michael Wlasichuk, M.D. AR 24. The examining physician had access to the medical record and noted that although Plaintiff suffers from "chronic lumbar pain with mild degenerative changes with some evidence of right L4-L5 sciatica;" Plaintiff's symptoms were not as severe as found by his treating physician. AR 24, 304-305.

Ultimately, the ALJ weighed the medical evidence and gave legally sufficient reasons for rejecting Dr. Bhat's opinion. Dr. Bhat's opinion was conclusory and failed to include corresponding treatment notes for items marked off on the check-box form. The ALJ was entitled to reject this unsupported opinion in favor of the opinion of the examining physician whose opinion was supported by substantial medical evidence in the record.

**3.     The ALJ Gave Sufficient Reasons to Discount Plaintiff's Credibility**

Plaintiff also argues that the ALJ erred in rejecting his excessive pain symptoms. (Doc. 17 at 10-11). The Court disagrees.

**A.     Legal Standard**

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.,* 775 F. 3d 1090, 1098 (9th Cir. 2014*).* First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight."). Factors an ALJ may consider include: 1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; 2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and 3) the applicant's daily activities. *Smolen,* 80 F.3d at 1282. Work records, physician and third party testimony about the nature, severity, and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin*.,

119 F.3d 789, 792 (9th Cir. 1997).

**B.     Analysis**

At the first step of the credibility analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 23. However, at the second step of the analysis, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. AR 23. In so doing, the ALJ provided several clear and convincing reasons for rejecting Plaintiff's excessive pain testimony.

First, the ALJ found Plaintiff's daily activities contradicted his pain testimony. AR 22. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. Here, Plaintiff's daily activities included living independently, driving, reading at the library, using a computer, and maintaining relationships. AR 23; *see Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (Evidence of a claimant's daily activities may be relevant to evaluating the credibility of a claimant's pain testimony.). The ALJ appropriately considered Plaintiff's activities of daily living, which included daily care, daily activities, and interaction with others.

Second, the ALJ found an "unexplained or inadequately explained failure to seek treatment." *Smolen*, 80 F.3d at 1282. The ALJ considered that Plaintiff "has not had any surgery, [he] has had only a little therapy." AR 24; *see Miner v. Colvin*, 609 F. App'x 454, 455 (9th Cir. 2015) ("despite [plaintiff's] allegations that [he] suffered disabling pain for years, [plaintiff's] doctors did not recommend surgeries or other aggressive treatments… [n]or did [plaintiff] pursue aggressive treatment; for instance, when surgery was discussed as one of several treatment options for allegedly disabling incontinence, [plaintiff] chose exercises"). Furthermore, the ALJ noted that Plaintiff had not gone to the emergency department for episodes of severe pain and instead tried physical therapy in the form of different stretching exercises. AR 39. Although Plaintiff argues his lack of additional treatment was due to a lack of financial resources, Plaintiff did not seek surgery or even discuss the possibility with any physician. AR 39. Moreover, when Plaintiff's physician

13

offered injections, Plaintiff denied treatment. AR 43-44.

The ALJ also noted that Plaintiff's impairments were well maintained on medication. AR 24. The ALJ was entitled to reject Plaintiff's credibility based on his successful response to medication. *See Gerard v. Astrue*, 406 Fed. Appx. 229, 232 (9th Cir. 2010) (unpublished) (ALJ properly discounted claimant's asserted severity of his anxiety and depression, observing in part that claimant "was responding to psychotherapy and medication"); *Morgan v. Apfel*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ properly discredited the claimant's subjective complaints by citing physician's report that mental symptoms improved with medication). Ample evidence demonstrated that medication had effectively controlled Plaintiff symptoms. AR 306, 321, 347, 387, 466. On December 12, 2011, Plaintiff told Dr. Bhat that medication had relieved his back pain. AR 317. Further, the ALJ noted that Plaintiff's impaired mental health functioning was situational—likely related to the death of his mother and problems with his significant other. AR 24.

Additionally, although the ALJ did not consider Plaintiff's drug usage in the credibility determination; the record reveals inconsistencies. At the administrative hearing when the ALJ asked about drug usage, Plaintiff omitted details about failing a drug test for methamphetamines as well as opiates—neither of which Plaintiff was prescribed—in May and September 2012. AR 21, 41. Instead Plaintiff only alluded to issues with alcoholism. AR 42.

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence demonstrating that Plaintiff's subjective symptom testimony was not entirely credible. The ALJ specifically identified what testimony he found lacked credibility and the corresponding evidence that undermined Plaintiff's complaints. *Lester v. Chater*, 81 F.3d at 834. If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Accordingly, the ALJ's credibility findings are free of legal error.

**4.     Step Five Analysis**

Lastly, Plaintiff raises two challenges to the ALJ's Step Five analysis: (1) the hypothetical posed to the vocational expert did not include all of his impairments, and (2) the ALJ failed to

explain inconsistencies between the DOT and the vocational expert's testimony. Plaintiff's arguments are without merit.

As to Plaintiff's first challenge, Plaintiff does not argue that the hypothetical posed to the VE did not include all the limitations found in the RFC, instead Plaintiff argues that because the ALJ did not include certain limitations in the RFC, the Step 5 analysis is flawed. Because, as discussed above, substantial evidence supports the ALJ's RFC finding, the hypothetical posed to the VE properly encompassed all of Plaintiff's limitations. *Thomas*, 278 F.3d at 956 ("In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental, supported by the record"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record").

With respect to Plaintiff's second challenge, he argues that although the VE described sedentary work as requiring an individual to stand two hours in an eight hour work day, the representative jobs suggested by the VE and as explained by the Dictionary of Occupational Titles ("DOT") describes sedentary as requiring standing 55% of the work period. (Doc. 17 at 13). Plaintiff thus argues that the VE's testimony and the DOT are in conflict.

When an expert's testimony conflicts with a DOT job listing, the ALJ "must elicit a reasonable explanation for the conflict before relying on the [expert's] evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4p, 2000 SSR LEXIS 8, 2000 WL 1898704, at *2; *see also Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007). An ALJ's failure to perform this step constitutes procedural error. *Id.* at 1153-54 & n.19. The Court may find the procedural error to be harmless if the VE provided sufficient support for his conclusion so as to justify any potential conflicts. *Id.* at 1154 n. 19.

Here, the VE offered a sufficient explanation to resolve the conflict with the DOT. The VE acknowledged that sedentary work, specifically as a sorter and inspector, "would require probably almost significantly always being in a seated position to do this work." AR 52. Therefore, the VE acknowledged that, as performed, the jobs of sorter and inspector require more sitting than standing. The VE therefore provided enough testimony to create a reasonable inference that

despite Plaintiff's standing limitations he can still perform sedentary work. *See Price v. Astrue*, 473 F. App'x 566, 568 (9th Cir. 2012) ("vocational expert was well aware of the reaching limitations and upon specific questioning by the ALJ testified that they were within the classifications in the Dictionary"); *Smith v. Colvin,* 2016 WL 3456906, at *2 (C.D. Cal. 2016) (Even if DOT inconsistency existed, VE sufficiently stated claimant could perform certain jobs).

Moreover, nothing in the DOT narrative job descriptions for the jobs of sorter and inspector compels the conclusion that a limitation to two hours of standing in a workday generally would preclude performance of those jobs. According to the DOT, each of the representative occupations are at the sedentary exertional level, and thus could require, among other things, "sitting most of the time" and walking or standing for only "brief periods of time." *See* DOT §§ 521.687-086 ["Nut Sorter"], 726.684-110 ["Inspector"]; Social Security Ruling ("SSR") 83-10 at *5, 1983 SSR LEXIS 30 at *13 (noting, in part, that sedentary work is "performed primarily in a seated position"); *see also Wester v. Colvin*, 2015 U.S. Dist. LEXIS 100542, 2015 WL 4608139, at *6 (C.D. Cal. July 31, 2015) (stating that "[c]ourts have rejected claims based on conflict" at step five "when a DOT description does not, on its face, conflict with the claimant's RFC if the VE's testimony or the tasks described by the DOT confirm that the job would accommodate the claimant's limitations"). Accordingly, the Court does not find that there is anything in the DOT descriptions of "inspector" and "sorter" that conflicts with Plaintiff's RFC.

For the above reasons, the vocational expert properly found that these two positions could be performed at the sedentary level. AR 52. On this record, the reliance by the ALJ on the vocational expert's testimony was proper.

///
///
///
///
///
///
///

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgement in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Zakary Copeland.

IT IS SO ORDERED.

Dated:   **September 2, 2016**          /s/ *Barbara A. McAuliffe*
                                         UNITED STATES MAGISTRATE JUDGE